USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/29/2026

uUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL TENNIS FEDERATION, LTD., | |
| Plaintiff, | |
| - against - | |
| WTA TOUR, INC., | |
| Defendant. | |

26-CV-3259 (VM)

**PRELIMINARY
INJUNCTION ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff International Tennis Federation, LTD. ("ITF") filed a motion on April 21, 2026, requesting that the Court issue a temporary restraining order ("TRO") and a preliminary injunction enjoining Defendant WTA Tour, Inc. ("WTA") from (1) amending the WTA By-Law's to remove the ITF as a WTA member and (2) preventing the ITF-elected Director and their alternate from attending meetings of the WTA Board of Directors ("WTA Board").

On April 29, 2026, this Court heard oral argument on ITF's motion. In addition to parties' presentations at oral argument, the Court has considered the Complaint, and the briefings and declarations submitted by the parties. Based on the record before the Court, the Court grants the ITF's request for a preliminary injunction because the ITF has demonstrated irreparable harm and a likelihood of success on

the merits. Alternatively, the Court finds that a preliminary injunction would be appropriate because the ITF has also shown that, at a minimum, there are serious questions going to the merits and the balance of hardships tips decidedly toward the ITF.

## I.    BACKGROUND

The ITF is a non-profit company that functions as tennis's global governing body. (See "Complaint" or "Compl.," Dkt. No. 1, ¶¶ 5, 11.) The WTA is a not-for-profit organization that organizes the WTA Tour, which is the worldwide tennis tour at the highest level of the women's professional game. (See id. ¶ 6, 12.) The WTA is made up of four classes of members: the Player Class, the Tournament Class, the Special Class, and the Federation Class, of which the ITF is the sole member. (See "WTA By-Laws", Dkt. No. 1, Ex. 1, § 2.1)

As provided for in the WTA's By-Laws, every other year, the Federation Class appoints one Federation Class Delegate and one Federation Class Alternate. (See id. § 4.1(c).) As the Federation Class's sole member, the ITF has the right to appoint a Federation Class Delegate and a Federation Class Alternate. (See id. § 4.1(c).) The Federation Class Delegate then appoints one Director and one Alternate Director to the WTA Board. (See id. § 5.3(a)(iii).) The WTA Board consists of

2

eight voting Directors: three appointed by the Player Class, three appointed by the Tournament Class, one appointed by the Federation Class, and the Board Chairman. (See id. § 5.2.)

Ordinary actions of the WTA Board may be taken by a simple majority vote. However, certain amendments to the WTA's By-Laws, including changes to the WTA's membership, are identified as "Supermajority Matters" that require a special voting process. Under this voting process, as described by Section 4.7(b) of the WTA's By-Laws, if the Federation Class Delegate does not vote in favor of the Supermajority Matter, then a second vote on that matter is held at a subsequent meeting. (See id. § 4.7(b).) At this second meeting, the Supermajority Matter can be adopted "regardless of whether the Federation Class Delegate votes in favor." (Id.) While Section 4.7 deals with voting by Class Delegates, this section is mirrored by Section 5.13 of the WTA By-Laws, which addresses voting by Directors on the WTA Board.

Section 4.7(c) of the WTA's By-Laws sets forth that "[n]otwithstanding the foregoing, no amendment to these By-laws which restricts the right of the Federation Class Delegate to elect a voting Director shall be adopted without the affirmative vote of five (5) Delegates, including the Federation Class Delegate." (Id. § 4.7(c).) Section 5.13(d) of the WTA's By-Laws likewise states that "[a]ny amendment to

these By-Laws which restricts the right of the Federation Class Delegate to elect a voting Director shall be subject to Section 4.7(c) hereof." (Id. § 5.13(d).)

On April 9, 2026, the WTA sent notice of a special meeting of the WTA Board for April 16, 2026, where the "purpose of the meeting is the consideration of the elimination of the Federation Class membership from the Corporation." (See Dkt. No. 1, Exs. 3 and 4). On April 16, 2026, at this special meeting of the WTA Board, a resolution was introduced to amend Section 2.1 of the WTA By-Laws to remove the Federation Class— of which ITF is the only member — as a member of the WTA. (See Compl. ¶¶ 31-32.) The WTA Board voted on the proposed resolution, which failed to pass because the Federation Class Director voted against it. (See id. ¶ 32.) A second vote on the resolution has been noticed for April 30, 2026. (See "Opposition" or "Opp.," Dkt. No. 19, p. 2.)

On April 24, 2026, the ITF filed a Complaint requesting a declaration "that the WTA By-Laws cannot be amended to eliminate the Federation Class without the affirmative vote of the Federation Class Delegate, and that the WTA By-Laws cannot be amended to directly or indirectly restrict the right of the Federation Class Delegate to elect a voting Director without the affirmative vote of the Federation Class

4

Delegate[.]" (Compl. p. 15-16.) The Complaint also requested a TRO and preliminary injunction to enjoin the WTA from: (i) "purporting to amend the WTA By-Laws to eliminate the Federation Class, or to otherwise directly or indirectly restrict the right of the Federation Class Delegate to elect a voting Director, without the affirmative vote of the Federation Class Delegate," and (ii) "preventing the Federation Class Director and Alternate Director from continuing to attend WTA Board meetings and exercising their rights under the WTA By-Laws." (Id.)

## II.   LEGAL STANDARDS

"The standard for a TRO is the same as the standard for a preliminary injunction." Sandoz Inc. v. Cediprof, Inc., No. 20 CIV. 5568, 2020 WL 4482634, at *2 (S.D.N.Y. Aug. 3, 2020). A party seeking a preliminary injunction must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010).

## III. DISCUSSION

The Court will impose a preliminary injunction based on the ITF's showing of irreparable harm and because the ITF is likely to succeed on the merits. Further, the ITF has also shown that, at a minimum, there are serious questions going to the merits along with a balance of hardships tipping decidedly toward the ITF.

A. IRREPRABLE HARM

The ITF has sufficiently demonstrated irreparable harm. As a result of WTA's actions, the ITF will imminently lose its WTA membership along with its associated governance rights and the ITF-elected Director position on the WTA's Board. This concrete loss of bargained for rights to participate in the management of the WTA constitutes irreparable harm. See Wisdom Imp. Sales Co. v. Labatt Brewing Co., 339 F.3d 101, 115 (2d Cir. 2003) ("[A] bargained-for minority right to participate in corporate management has value in and of itself and a denial of that right, without more, can give rise to irreparable harm."); Solar Cells, Inc. v. True North Partners, LLC, No. Civ. A. 19477, 2002 WL 749163 at *7-8 (Del. Ch. Apr. 25, 2002) ("The right to participate in a management group is a valuable right whether or not that participation includes control of the group.") "Other courts in this Circuit have similarly recognized that the loss of a bargained-for 'voice' in the management of a company can

6

constitute irreparable harm." <u>Woods v. Bos. Sci. Corp.</u>, 2006 WL 4495530, at *22 (S.D.N.Y. Nov. 1, 2006). That the WTA's Board may take actions at the upcoming May 4 board meeting without the ITF-elected Director's vote and input further supports a finding of irreparable harm. Any actions taken by the WTA Board may be difficult for the Court to undo and the harm would not be adequately remedied by a monetary award.

   B. <u>LIKELIHOOD OF SUCCESS ON THE MERITS</u>

     The ITF is likely to succeed on the merits. Section 4.7(c) of the WTA's By-Laws broadly prohibits any amendment to the WTA's By-Laws, "which restricts the right of the Federation Class Delegate to elect a voting Director," without the affirmative vote of the Federation Class Delegate. Section 4.7(c)'s language of "[n]otwithstanding the foregoing" clearly establishes a restriction on the voting process for certain Supermajority Matters that would "restrict[]" the right of the Federation Class Delegate to elect a voting Director. The WTA's attempt to remove the ITF's membership by amending the WTA's By-Laws to eliminate the Federation Class falls within the scope of Section 4.7(c). There is no greater restriction on the ability of the Federation Class Delegate to elect a voting Director than the wholesale elimination of the Federation Class's membership in

7

the WTA. Accordingly, the ITF is likely to succeed on the merits.

### C. SERIOUS QUESTIONS AND BALANCE OF HARDSHIPS

Even if the ITF were not likely to succeed on the merits, which the Court finds that it is, at a minimum, there are serious questions based on the parties' competing interpretations of the WTA's By-Laws going to the merits and the balance of hardships weighs in the ITF's favor. "As an alternative to the 'likelihood of success on the merits' standard, the 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the tilt of the equities and the net private and public hardships outweigh the benefits of not granting the injunction." AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc., 740 F. Supp. 2d 465, 473-74 (S.D.N.Y. 2010) "The balance of hardships asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth., 922 F. Supp. 2d 435, 444 (S.D.N.Y. 2013), aff'd, 764 F.3d 210 (2d Cir. 2014) (alteration omitted).

Here, the balance of hardships weighs decidedly in the ITF's favor. As described above, the loss of membership will cause the ITF irreparable harm without an injunction. The WTA argues that an injunction will harm it by forcing it to maintain a governance arrangement with the ITF that it does not want. The Court is not convinced that an injunction will cause the WTA harm. The ITF and WTA have for decades maintained a relationship and the injunction will simply continue this status quo. Further, as the WTA itself identifies, the WTA has a Conflicts of Interest Policy that could be used to address any conflicts of interest between the organizations. (See Opp., p. 21, 24.) Accordingly, the Court finds that, in addition to the ITF being likely to succeed on the merits, at a minimum, there is a serious question going to the merits and that the balance of hardships weighs in the ITF's favor.

**IV.  ORDER**

Based on the foregoing, plaintiff International Tennis Federation, Ltd.'s Motion to Show Cause (Dkt. No. 3) is hereby **GRANTED** and it is **ORDERED** as follows:

1. Defendant WTA Tour, Inc. is enjoined from purporting to amend the WTA By-Laws to eliminate the Federation Class, or to otherwise directly or indirectly restrict the right of the Federation Class Delegate to elect a

9

voting Director, without the affirmative vote of the Federation Class Delegate.

2. WTA Tour, Inc. is also enjoined from preventing the Federation Class Director and Alternate Director from continuing to attend WTA Board meetings and exercising their membership and governance rights under the WTA By-Laws.

**SO ORDERED.**

Dated:    29 April 2026
          New York, New York

_____
                    Victor Marrero
                    U.S.D.J.

10